**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JENNIFER N.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 25-16411 (SDW)<br><br>**OPINION**<br><br>September 9, 2026 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Jennifer N.'s[1] ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Gina Pantuso's ("ALJ Pantuso") denial of Plaintiff's claim for supplemental security income ("SSI") and a period of disability and disability insurance benefits ("DIB") under the Social Security Act ("Act"). (D.E. 1.) This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 42 U.S.C. § 405(g). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Commissioner's decision is **AFFIRMED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural History

[1] Plaintiff is identified only by her first name and last initial in this opinion, pursuant to Standing Order 2021-10, issued on October 1, 2021, available at https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

On July 22, 2022, Plaintiff protectively filed a Title II application for a period of disability and DIB. (D.E. 9 (Administrative Record ("R.")) at 82.) On July 23, 2022, Plaintiff also filed a Title XVI application for SSI. (R. 81–82.) In both applications, Plaintiff claims that her disability began on May 20, 2022 ("alleged onset date") due to various physical and mental conditions.[2] (R. 280.) These claims were originally denied by the Social Security Administration ("SSA") on January 11, 2023, and upon reconsideration, on May 3, 2023. (R. 126, 137.)

On February 27, 2024, Administrative Law Judge Dina Loewy ("ALJ Loewy") held an administrative hearing via teleconference. (R. 46–76.) Due to ALJ Loewy's prolonged leave of absence, the case was reassigned by management to another Administrative Law Judge ("ALJ"), ALJ Pantuso, as permitted by HALLEX § I-2-1-55(F)(2).[3] (R. 18.) ALJ Pantuso conducted a review of all the evidence using the five-step evaluation process. (*Id.*) Despite having the following severe impairments: bilateral carpal tunnel syndrome ("CTS") and left trigger thumb status-post left carpal tunnel release and trigger thumb release surgery, hypertension ("HTN"), obesity, depression, anxiety, and post-traumatic stress disorder ("PTSD"), ALJ Pantuso issued a written decision denying Plaintiff's applications and found that Plaintiff was not disabled. (R. 20, 38–39.) Plaintiff's request for review of ALJ Pantuso's decision was denied on August 19, 2025. (R. 1.) Plaintiff appeals to this Court; the parties timely completed briefing. (D.E. 1, 10, 12.)

**B. Factual History**

Plaintiff was born on August 27, 1983, and the highest level of education completed is some high school, as she completed up to the ninth grade. (R. 69, 91, 101, 762.) From December

[2] Plaintiff lists eight conditions that limit her ability to work: low vision, anxiety, high blood pressure, depression, Bell's palsy, facial droop, strokes, and insomnia. (R. 280; *see also* R. 351, 762, 763.)

[3] HALLEX § I-2-1-55(F)(2) has since been renumbered to HALLEX 01210.055(F)(2).

2010 to April 2020, Plaintiff worked as a receptionist at various bail bonds offices.[4] (R. 70–71, 91, 101, 111, 282.) From May 2020 to January 2021, Plaintiff worked as a bondsman agent for AAA Professional Bail Bonds ("AAA").[5] (R. 91, 101, 111, 123, 281.) While employed at AAA, Plaintiff would post bonds, handle collections, answer the phone, enter confidential data into files, and occasionally go to the courthouse to post bonds in person. (R. 54, 70.) From October 2021 to February 2022, Plaintiff worked for Ameritex Guard Services.[6] (R. 91, 101, 111, 123, 281–82.) From May 2020 to January 2021, Plaintiff worked for Hello Fresh.[7] (R. 91.) From February 2022 to May 2022, Plaintiff worked at McDonald's, alleging that her period of disability and SSI benefits began in the same month her employment there ended. (R. 91, 101, 111, 123, 282, 292, 762, 1151, 2495, 2657.)

1. <u>Medical Record</u>

On April 7, 2022, Plaintiff visited the Emergency Department at Tuomey Hospital with numbness and palpitations. (R. 525.) While there, Plaintiff saw Jason Bruce, D.O., who determined that Plaintiff had mild anemia, no focal neuro deficit, and that Plaintiff was stable for discharge with no evidence of arrhythmia on the monitor and a normal electrocardiogram result. (R. 525–30.)

---

[4] Plaintiff writes in her Work Background form that she stopped working at Big Bubbas Bail Bonds in June 2020, not April, as indicated elsewhere in the record. (R. 398.)

[5] Plaintiff writes in the Work History Report that she stopped working at AAA in July 2021, not January, as indicated elsewhere in the record. (R. 292.) Additionally, Plaintiff wrote that she worked at AAA from June 2020 until October 2021 in her work background form. (R. 398.)

[6] Plaintiff writes in the Work History Report and her work background form that she stopped working at Ameritex Guard Services in January 2022, not February, as indicated elsewhere in the record. (R. 292, 398.)

[7] Plaintiff writes in the Work History Report that she began working at Hello Fresh in August 2021, not May 2020, and stopped working there in September 2022, not January 2021, as indicated elsewhere in the record. (R. 292.)

On July 17, 2022, Plaintiff went to University Hospital's Emergency Department ("UHED"), where she was treated by Howard Greller, M.D., for left-sided facial droop or paralysis caused by Bell's palsy and a cranial nerve disorder. (R. 633–38.) Plaintiff had a headache, eyelid weakness, an inability to raise her left forehead, and could not close her left eyelid completely. (R. 636–37.) Sarah Dunn, M.D., performed a clinical examination and indicated that there was evidence of "old strokes" on the Plaintiff's computed tomography ("CT") scan. (R. 639.) Plaintiff was prescribed medications and discharged from the hospital. (R. 638–49, 676.) Subsequently, Plaintiff's lab work, collected on July 25, 2022, and reviewed on August 1, 2022, reflected a diagnosis of prediabetes. (R. 2697.) Plaintiff had a follow-up visit with neurologist Benjamin Puccio, M.D., on October 3, 2022. (R. 942–43, 945, 948.) While there, Dr. Puccio noted Plaintiff's left Bell's palsy with incomplete recovery. (R. 948.)

On October 20, 2022, Plaintiff saw optometrist Molly Golz, O.D., at Short Hills Ophthalmology Group for her decreased vision due to Bell's palsy. (R. 754.) Plaintiff's examination confirmed her left facial droop, incomplete closure of the eyelid, her need for prescription glasses, and an unreliable visual field test. (R. 756.) On November 3, 2022, Plaintiff saw ophthalmologist David Kelly, M.D., who prescribed eye drops for Plaintiff's left eye after Plaintiff's examination revealed Plaintiff's visual acuity to be 20/30 + 3 in the right eye and 20/70 in the left eye. (R. 924–26.)

On November 8, 2022, Plaintiff saw Paulette Sabol, Ph.D., at Essex Diagnostic Group, where Dr. Sabol conducted a psychological consultative examination. (R. 762–64.) While there, Plaintiff reported poor memory stemming from two strokes, anxiety, depression, and auditory hallucinations. (R. 762.) Dr. Sabol diagnosed Plaintiff with mild cognitive impairment secondary to strokes, chronic PTSD, major depressive disorder (severe with psychotic features), generalized

anxiety disorder, and significant memory loss. (R. 764.) On November 10, 2022, Francky Merlin, M.D., performed an evaluation of Plaintiff and diagnosed her with HTN, prescribing antihypertension medications. (R. 765–66.)

On December 7, 2022, Peter Nussbaum, M.D., conducted Plaintiff's medical evaluation as part of her initial disability determination explanation. (R. 83–85.) Dr. Nussbaum found that since Plaintiff's Bell's palsy and other issues could be successfully conservatively managed, her vision/ocular status was not severe. (R. 85.) On April 25, 2023, State agency medical consultant Leonard Nicosia, M.D., found that Plaintiff's vision impairment was nonsevere. (R. 105–08.)

On December 12, 2022, Joseph Wieliczko, Psy. D., conducted the Plaintiff's psychiatric review and determined that Plaintiff had moderate limitations in the "paragraph B" criteria, except for the ability to concentrate, persist, or maintain pace, which were classified as marked limitations. (R. 86–87.) On December 27, 2022, Shakra Junejo, M.D., and Jolita Burns, M.D., concluded that Plaintiff could never climb ladders, ropes, or scaffolds, and should avoid moderate exposure to hazards, but could perform light exertion with frequent postural activities. (R. 89–99, 110–14, 120–21.)

After Plaintiff followed up with Dr. Puccio on February 27, 2023, Dr. Puccio diagnosed Plaintiff with "mild cognitive defects primarily in attention, in setting of PTSD and mood disorder," and continued Plaintiff's stroke prevention protocol. (R. 2396, 2399, 2403.) On January 4, 2023, Plaintiff saw Paul Langer, M.D., who explained that she was slowly improving. (R. 809–11.) Plaintiff followed up with Dr. Langer on April 5, 2023, where he maintained the same diagnosis and treatment plan. (R. 2281, 2284.) On April 30, 2023, Plaintiff saw State agency psychological consultant Julie Bruno, Psy. D., who found that Plaintiff has moderate limitations in the "paragraph B" criteria for Plaintiff's ability to understand, remember, and carry out detailed

instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; work in coordination with or proximity to others without being distracted by them, complete a normal workday or workweek, or travel in unfamiliar places or use public transportation; interact with the public, accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers; respond appropriately to changes in the work setting; be aware of normal hazards and take precautions; and set realistic goals or make plans independently of others. (R. 107–23.) On November 10, 2023, Plaintiff saw psychiatrist Ron Hirsch, M.D., and Eman Lordi, L.C.S.W., where they noted Plaintiff experienced anxiety episodes. (R. 2424–27.)

On March 23, 2023, Plaintiff saw Evan Chung, M.D., for her bilateral CTS. (R. 1169–76.) On May 16, 2023, Plaintiff saw Walter Bratchenko, P.A., as her left side had become worse than her right side. (R. 2187–88.) On August 29, 2023, Plaintiff saw orthopedist Rahul Rai, M.D., for a compression test, which showed that Plaintiff's left hand was worse than the right. (R. 2111.) On September 5, 2023, Plaintiff underwent left carpal tunnel release and left trigger thumb surgery at University Hospital. (R. 56–57, 61–62, 1571, 1573, 1576–79.) On July 18, 2023, Plaintiff had an occupational therapy appointment with Michael Gouchuio, O.T., who noted a normal range of motion, but decreased bilateral grip strength. (R. 2525–28, 2548.)

On May 27, 2023, Plaintiff received treatment for neck and back pain with left arm weakness. (R. 1724–27.) She had a CT scan of her head conducted, which showed no mass effect or intracranial hemorrhage. (R. 1726.) Plaintiff's next neurologist visit was with Molly Jacob, A.P.N., on August 18, 2023, where Plaintiff reported that she was "doing fine." (R. 2116.) No issues or abnormalities were discovered or noted during that visit. (R. 2113–22.) On December

4, 2023, during an emergency department visit for headaches, Plaintiff received a repeat CT scan, which showed the same results of no mass effect or hemorrhage. (R. 1196, 1200–28.)

On July 11, 2023, Plaintiff visited primary care physician Mustafa Sidali, D.O., at Primary Care Essex County for a physical examination. (R. 1186.) Plaintiff self-reported her medical history, including her diagnoses of prediabetes, HTN, hyperlipidemia ("HLD"), Bell's palsy (left-sided), 2 mini-strokes, anxiety, and depression. (*Id.*) Plaintiff's exam was unremarkable, and Dr. Sidali noted that Plaintiff also has obstructive sleep apnea, cerebral artery occlusion with cerebral infarction, and class 3 obesity. (R. 1186–91.) On November 1, 2023, Plaintiff returned to Dr. Sidali to follow up from her October visit to UHED to treat her kidney stones. (R. 1178–84.) On December 1, 2023, and February 1, 2024, Plaintiff returned to Dr. Sidali for primary care visits. (R. 2459, 2469–70, 2472, 2478.) Dr. Sidali diagnosed Plaintiff with new-onset headaches at the February visit and referred her to a neurologist. (R. 2470.)

2. Administrative Hearing

Pursuant to Plaintiff's request for an administrative hearing, ALJ Loewy held a telephonic hearing on February 27, 2024. (R. 144, 185; *see generally* R. 46–76.) At the hearing, Plaintiff was represented by counsel, Jason Carney, Esq. (R. 17, 48, 211, 214.) ALJ Loewy heard testimony from Plaintiff and an impartial vocational expert, Victor G. Alberigi ("VE Alberigi"). (R. 46–76, 399.)

Plaintiff testified to being unable to work because she "had two strokes,"[8] has severe CTS, is healing from having her "iron operated last year," is preparing to have her other hand operated on, and she suffers from migraines, anxiety, and depression. (R. 55–57.) She testified to "not really" improving from her surgery because "it still like I can't really do much with it because it

[8] Plaintiff refers to having two strokes at the hearing, but the objective evidence in the record only supports one stroke. (R. 56.)

hurts everything fall[s] off my hands." (R. 62.) Plaintiff testified that she experiences symptoms in her right hand "[m]ost of the time" and that nothing makes the pain better. (R. 63.) Plaintiff explained that she still experiences numbness and tingling symptoms in her left arm and left leg "probably every three weeks or every month," and it lasts "about two days." (R. 64.)

Plaintiff testified that she has headaches or migraines twice a month, lasting usually three to four days. (R. 66.) When asked about what symptoms she experiences because of her depression, Plaintiff testified to feeling like she "don't want to just be in the house. I don't go nowhere. . . I just be home. I really don't do nothing in bed." (R. 64.) When asked about her anxiety symptoms, Plaintiff testified to experiencing them once a week and having palpitations. (R. 65.) Plaintiff testified to taking medications for both her depression and anxiety symptoms, but she recently increased the dose of the medications treating her depression. (R. 65–66.)

Plaintiff also testified that she could only walk for about two blocks, stand for about 15 minutes at a time, and lift "[p]robably a bag with bread and eggs." (R. 61–62.) She testified that she had difficulty maintaining her household, including chores, cooking, and cleaning. (R. 67.) However, Plaintiff testified to being able to take care of her own personal hygiene. (*Id.*)

VE Alberigi testified that Plaintiff cannot do her past relevant work, which is classified as sedentary exertion that is skilled with a Specific Vocational Preparation ("SVP") of six (DOT#186.267-010). (R. 70–71.) Instead, VE Alberigi testified that someone with similar limitations would be capable of performing the jobs of a housekeeper or office cleaner, mail clerk, assembler of electronic accessories, and a produce sorter, all of which involve unskilled, light exertion, and have an SVP of 2. (R. 72.)

## II. LEGAL STANDARD

### A. Standard of Review

When reviewing applications for Social Security disability benefits, this Court exercises plenary review of legal issues decided by the ALJ and upholds factual findings if supported by substantial evidence. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024); 42 U.S.C. § 1383(c)(3); 42 U.S.C. § 405 (g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Under the substantial evidence standard, the threshold for evidentiary sufficiency is not high. *Id.* An ALJ's decision cannot be set aside merely because this Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986). So long as the ALJ's decision sufficiently develops the record and explains its findings to permit meaningful review, the ALJ need not "use particular language or adhere to a particular format" when conducting the analysis. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

**B. The Five-Step Disability Test**

Under the Act, the SSA is authorized to pay SSI and DIB to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To make a disability determination, the ALJ follows a five-step, sequential analysis. 20 C.F.R. § 404.1520(a); *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–03 (3d Cir. 2019). The ALJ determines whether the claimant: first, is currently engaged in substantial gainful activity ("SGA"); second, has a "severe" and "medically

determinable" impairment; and third, has an impairment, or combination thereof, that is equal to or exceeds one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(a)(4)(i)-(iii). Prior to reaching the fourth step, the ALJ considers the claimant's residual functional capacity ("RFC"), which is "the most [the claimant] can still do despite [his or her] limitations," as it relates to meeting "the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(1), (4). Then, at step four, the ALJ determines whether the claimant can still do his or her past relevant work[9] by comparing his or her RFC to the "physical and mental demands" of that work. *Id.* §§ (a)(4)(iv), (f). Lastly, at step five, the ALJ decides whether the claimant "can make an adjustment to other work" considering his or her RFC, age, education, and work experience. *Id.* § (a)(4)(v). The claimant bears the burden of proof at all steps except step five, where the burden is on the Commissioner. *Hess*, 931 F.3d at 201.

## III. <u>DISCUSSION</u>

### A. ALJ Pantuso's Decision

On December 29, 2025, ALJ Pantuso issued a decision concluding that Plaintiff was not disabled from the alleged onset date to the date of last insured. (R. 38–39.) At step one, ALJ Pantuso found that Plaintiff had not engaged in SGA since May 20, 2022—the alleged onset date. (R. 20.) At step two, ALJ Pantuso found Plaintiff has the following severe impairments which significantly limit her ability to perform basic work activities: bilateral CTS and left trigger thumb status-post left carpal tunnel release and trigger thumb release surgery, HTN, obesity, depressive disorder, anxiety disorder, and PTSD. (R. 20.) ALJ Pantuso determined that Plaintiff's low

---

[9] Past relevant work is work performed by the claimant "within the past five years that was substantial gainful activity and that lasted long enough" for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1)(i).

vision,[10] lumbar spine impairment,[11] kidney stones, microscopic hematuria,[12] pre-diabetes, HLD, and anemia[13] constituted non-severe impairments, whether considered individually or in combination. (R. 22–23.) Additionally, ALJ Pantuso determined that any headache impairment is not medically determinable as a primary impairment due to a lack of objective evidence, as medically determinable impairments may not be solely established based upon symptoms alone, or the claimant's alleged symptoms. (R. 23.)

At step three, ALJ Pantuso concluded that Plaintiff's impairments, individually or in combination, did not meet or medically equal the severity of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24–25.) In considering Plaintiff's mental impairments, ALJ Pantuso determined Plaintiff has a mild limitation in understanding, remembering, or applying information and moderate limitations in interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (R. 25–27.) According to ALJ Pantuso, Plaintiff's mental

[10] ALJ Pantuso determined that there is no objective evidence that this condition causes more than minimal functional limitations in the claimant's ability to perform basic work-related activities and found the opinions of Dr. Nussbaum and Dr. Nicosia persuasive. (R. 22.) Moreover, Plaintiff did not testify to any visual impairment, despite extensive questioning. (*Id.*)

[11] ALJ Pantuso determined that there is no objective evidence that this condition causes more than minimal functional limitations in the claimant's ability to perform basic work-related activities, and Plaintiff did not testify to any lumbar spine impairment, despite extensive questioning. (R. 22–23.)

[12] ALJ Pantuso determined that there is no objective evidence that Plaintiff's kidney stones or microscopic hematuria caused more than minimal functional limitations in the claimant's ability to perform basic work-related activities, and Plaintiff already received recommendations for prevention. (R. 23.)

[13] ALJ Pantuso determined that there is no objective evidence that Plaintiff's pre-diabetes, HLD, and anemia caused more than minimal functional limitations in the claimant's ability to perform basic work-related activities, and the evidence showed these impairments were medically managed with Plaintiff's primary care providers without any indications of any significant objective findings. (R. 23.)

impairments "do not cause at least two 'marked' limitations or one 'extreme' limitation," and thus failed to satisfy the "paragraph B" criteria.[14] (R. 27.)

Next, ALJ Pantuso found that Plaintiff has the RFC to perform light work. (R. 28.) In coming to this conclusion, ALJ Pantuso considered all symptoms and the extent to which these symptoms were consistent with objective medical evidence. (R. 28.) Although Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," ALJ Pantuso determined Plaintiff's statements concerning the intensity, persistence, and limiting effects were inconsistent with the medical evidence. (R. 31.) Relating to Plaintiff's mental impairments, ALJ Pantuso explained that the "overall evidence of record does not support the full extent of her alleged functional limitations" as the "objective evidence does not support the findings at the one-time psychological consultative examination, and it does not support the claimant's subjective reports of functional limitations due to her mental impairments as contained within the Adult Function reports, Third-Party Function reports, and her testimony."[15] (R. 31, 33.) Relating to Plaintiff's physical impairments, ALJ Pantuso noted that there is evidence of the existence of the bilateral CTS and left trigger thumb. (R. 34.) However, there is no significant treatment after the procedure in September 2023,[16] and Plaintiff's primary care physician noted unremarkable examinations from November 2023 to February 2024. (R. 34.) Additionally, Plaintiff received relatively unremarkable treatment for her HTN and obesity. (R. 35.) Therefore,

---

[14] The "paragraph B" criteria refer to the criteria of listings 12.04 and 12.15. In her decision, ALJ Pantuso explained that to satisfy said criteria, "the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning." (R. 25.)

[15] ALJ Pantuso is referring to the November 8, 2022, psychological consultative examination with Dr. Sabol. (R. 31.)

[16] ALJ Pantuso refers to Plaintiff's left carpal tunnel release and left trigger thumb surgery on September 5, 2023. (R. 34.)

ALJ Pantuso accounts for all of these conditions fully by "limiting the claimant to light exertion, occasional climbing ramps/stairs, never climbing ladders, ropes, or scaffolds, occasional stooping or crouching, occasional kneel, no crawling, frequent reaching, handling, fingering, and feeling, avoid even moderate exposure to hazardous machinery, unprotected heights, and moderate noise level." (R. 34–35.)

ALJ Pantuso found Dr. Wieliczko's opinion of Plaintiff's marked limitations unpersuasive because it is not consistent with the overall record, but the opinion regarding moderate limitations persuasive because it is generally consistent with the overall record. (R. 35.) Additionally, ALJ Pantuso found Dr. Bruno's opinion that Plaintiff had moderate limitations generally persuasive because Dr. Bruno provided support from and was generally consistent with the record. (R. 36.) Relating to the Plaintiff's physical limitations, ALJ Pantuso found Dr. Junejo's and Dr. Burns' opinions generally persuasive because they included a detailed rationale and review of the evidence to make their determinations. (R. 36.)

At step four, ALJ Pantuso concluded that Plaintiff's past relevant work was as a Bondsman Agent. (R. 37.) At step five, relying on VE Alberigi's testimony, ALJ Pantuso concluded that Plaintiff could perform work that exists in significant numbers in the national economy, such as being an office cleaner, mail sorter, or assembler of electronic accessories.[17] (R. 38, 39.) Subsequently, ALJ Pantuso concluded that Plaintiff was not disabled under the Act during the relevant period. (R. 38, 39.)

**B. Analysis**

[17] *See* n.7 for more details related to VE Alberigi's recommendations regarding existing work in the national economy. (R. 72.)

On appeal, Plaintiff seeks reversal or remand of the Commissioner's decision. (*See* D.E. 10 at 18.) Plaintiff takes issue with ALJ Pantuso's RFC determination on two grounds. (D.E. 10 at 1.) This Court considers the arguments in turn and finds each unpersuasive.

1. No Evidence in Record to Support Finding Regarding Interactions with Coworkers

Plaintiff claims ALJ Pantuso's RFC determination failed to account for the "'accurate and logical bridge' between the evidence and the finding that Plaintiff could frequently interact with coworkers and supervisors within a 30-60-day training period." (D.E. 10 at 1, 8 (cleaned up).) Plaintiff maintains that ALJ Pantuso failed to provide evidence from the record to support this finding in the RFC. (*Id.* at 8.) Plaintiff argues that the medical opinions of Drs. Wieliczko, Bruno, and Sabol, opinions that ALJ Pantuso found persuasive, do not support ALJ Pantuso's finding that Plaintiff could participate in "frequent contact with coworkers and supervisors within the first 30 to 60 days while training." (*Id.* at 9–10.)

ALJ Pantuso has the exclusive responsibility of making an RFC determination and must examine "all of the relevant medical and other evidence" to do so. 20 C.F.R. §§ 404.1545(a) & 404.1546(c); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). When considering medical evidence, a treating physician's opinion "does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 196 n.2 (3d Cir. 2011). An ALJ must adequately consider and assess the persuasiveness of relevant medical evidence, and explain the reasons for the decision, on the record. 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.1520c; *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). However, "the ALJ is free to accept some medical evidence and reject other evidence, provided that he [or she] provides an explanation for discrediting the rejected evidence." *Zirnsak v. Colvin,* 777 F.3d 607,

614 (3d Cir. 2014). In conducting his or her analysis, the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative medical finding from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). Instead, the ALJ must simply "articulate how [he or she] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis," considering the eight factors set out in C.F.R. § 404.1520c(c). *Id.* Of the eight factors, however, supportability (factor one) and consistency (factor two) are the most important and must be addressed; factors three to eight may, but need not, be addressed. *Id.* § 404.1520c(b)(2).

In reaching her RFC determination, ALJ Pantuso explained that she considered the medical opinions and prior administrative medical findings in evidence. Plaintiff takes issue with the *weight* ALJ Pantuso assigned to the medical opinions of Doctors Wieliczko, Bruno, and Sabol, which were all deemed generally persuasive, except where they were not consistent with the overall evidence of the record. (*See* D.E. 10 at 8–11; R. 27–28, 31–33.) But ALJ Pantuso articulated how and why she came to these conclusions, (R. 27–28, 31–33), and this Court is in no position to re-weigh the evidence. *See Chandler*, 667 F.3d at 359 ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."). For example, ALJ Pantuso explained that she found Dr. Wieliczko's opinion generally persuasive where he "supported it with his review of the evidence, as well as it[s] general[] consistency with the overall evidence of the record" and generally unpersuasive where the opinion was inconsistent with the overall evidence of the record which showed "relatively unremarkable MSEs by [Plaintiff's] treating providers who prescribed psychotropic medications, along with concurrent notations of [Plaintiff's] denials of most psychologically based symptoms starting at the November 16, 2022 visit." (R. 27.) As to Dr. Sabol, ALJ Pantuso explained that she deemed her opinion unpersuasive because Plaintiff's

treatment records generally showed unremarkable objective findings on Plaintiff's mental status and relatively minimal subjective complaints, which was inconsistent with Dr. Sabol's one-time examination and diagnosis of mild cognitive impairment secondary to strokes, PTSD, generalized anxiety disorder, severe major depressive disorder with psychotic features, and significant memory loss. (R. 31.)

In reviewing ALJ Pantuso's decision and the record, this Court finds that the RFC determination was supported by substantial evidence. *See Zaborowski*, 115 F.4th at 639. In assessing Plaintiff's RFC, ALJ Pantuso provided a sufficient narrative discussion of Plaintiff's medical record, which considered the medical evidence in the record and explained how ALJ Pantuso concluded that Plaintiff's impairments do not render her incapable of performing light work that exists in significant numbers in the national economy. (R. 38.)

2. Maintain a Schedule and Regular Attendance

Plaintiff also contends ALJ Pantuso failed to explain the rationale and incorporate the "critical limitations" from the opinions of Doctors Wieliczko and Bruno in her RFC analysis. (D.E. 10 at 14–17.) This Court rejects this argument, as it amounts to another offer for this Court to re-weigh the evidence. ALJ Pantuso did incorporate the doctors' overall findings of moderate mental limitations by limiting Plaintiff to repetitive tasks, responsibility for only simple work-related decisions, requiring no interaction with the public, and limited interaction with coworkers and supervisors, except for during training periods. (R. 27–28.) Nonetheless, ALJ Pantuso is not required to give weight to every section of the mental RFC portion of the Disability Determination Form in Section 1. *See* POMS DI 24510.060(B)(2)(a); *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 636 (3d Cir. 2010); *Wise v. Comm'r of Soc. Sec.*, 626 F. App'x 357, 360 (3d Cir. 2015) ("ALJs are not required to give any weight to these fill-in-the-blank and checklist portions of the RFC

assessments . . . their focus instead should be on the narrative portions of the assessments where the medical experts expound their opinions."); *Molloy v. Astrue*, No. 08-4801, 2010 WL 421090, at *11 (D.N.J. Feb. 1, 2010).

Furthermore, ALJ Pantuso is not required to adopt every facet of an opinion, even if that opinion was found to be persuasive. *See* 20 C.F.R. §§ 404.1520c(a), 416920c(a) (an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."); *see Wilkinson v. Comm'r Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014) ("[N]o rule or regulation compels an ALJ to incorporate into an RFC every finding made by a medical source simply because the ALJ gives the source's opinion as a whole 'significant' weight."). Therefore, this Court finds that ALJ Pantuso sufficiently addressed and considered Doctors Wieliczko and Bruno's opinions and Plaintiff's potential limitations related to maintaining a schedule and regular attendance. *See* 20 C.F.R. § 404.1520c(b)(1); *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record.").

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**. An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties